Good morning, Your Honors. My name is Marina Cobb. May I please the Court? I represent Petitioner Nune Sargsyan in her appeal from the BIA decision denying her appeal from the IJA's decision based on adverse credibility. And we believe that adverse credibility determination was not supported by substantial evidence. So she had a lot of trouble with dates. How do we get around that as a ground for and the IJA relied on that, the BIA affirmed on that ground, basically on those grounds. How do we get around it? Correct, Your Honor. And basically there are cases that support standing or the Ninth Circuit held that may or just because there's a date that we're confused, you know, that's not sufficient for substantial evidence or for adverse credibility. Doesn't that depend, counsel, on how significant the discrepancy is? For example, with regard to the salon burning down, her testimony was that this happened while she was still in Armenia and gave a date that was consistent with that, but then gave a date a couple years later when she was already in the United States. That seems like a little more than just not remembering if it was March 1st or March 17th. Yes, Your Honor, I understand that. And she testified on a direct, it was a 2005, the salon burned down. Then her cross-examination was later. And I don't know, she was just confused and she said it was in 2006. Well, it couldn't have been in 2006 because she was in the United States already in 2005. And when that was pointed out to her, she obviously realized that she just made a mistake in terms of the year, but everything else was correct. But are we compelled to believe her? I mean, that really is a difficult standard for you to meet. Your Honor, I believe that this is not this is not one of those inconsistencies that go to the heart of the asylum claim. Whether, because she had, you have to look at the totality of the documents that were provided to corroborate her statements. She had her declaration, original one, then there was a subsequent declaration, and her testimony. And she basically was consistent with the dates when the extortion started. It was continuous. It was continued for almost a year. And the police officer, chief of police officers, trying to take over the property. Excuse me, I had one other question that was brought up by what you just said a moment ago. You said that the inconsistencies don't go to the heart of the claim. But isn't this a post-real ID Act case so that it no longer has to go to the heart of the claim to support an adverse credibility finding? That's correct, Your Honor. But there are also trivial inconsistencies that should not affect the adverse credibility determination. And just because she was inconsistent in the cross-examination, she was just confused with the year of the incident. I don't believe that this is, you know, major inconsistencies. This is just trivial inconsistencies to the date. And there were cases by Ninth Circuit stating that the dates themselves, you know, if the person is confused about the dates, that should not be sufficient for adverse credibility determination. There was, in addition to the dates, there was some omission that the IJA and the BIA considered this to be inconsistencies. They're not inconsistencies, they were just omissions. For example, the fact that she didn't mention in her original declaration the injury to her teeth, you know, that she had lost some damage to the front four teeth. That's not inconsistent, it's just an omission. In her, she was not represented by an attorney. It was a layperson. She was never actually asked the question whether everything was translated to her the first time when she filed the original declaration. On the cross-examination, the government attorney asked whether she went over the facts. And she said she did. She told the story to her friend who wrote it down who was not an attorney. So what medical or dental records were introduced to support the injury to the teeth? Yes. For the dental, it was received that the dental work was done to her four teeth. Now, she testified that she damaged five teeth, but the fifth tooth did not require any work on it. In other words, it wasn't done any dental work on it. And did she ever lose any teeth or were they merely loosened? No, she lost. Two of them were replaced. So she's got false teeth or implants. Correct. And in terms of the injury to the teeth were part of her actual rape. The rape was mentioned in the original declaration. So there are cases in the Ninth Circuit and other circuits where the courts said that if some of the details are not in the original declaration, that's not critical. In other words, you can add more details when specific questions are asked. In her subsequent declaration when she was already represented by an attorney, there was mention that when she fell as a result of her rape, she felt a mouth full of blood. So she, again, she didn't go into details about each tooth, not as much as it was during the testimony, but it is obvious that a lot of specific questions were asked and therefore she described the injuries more in detail. And the same thing for the actual rape. She went to an ultrasound facility five days later to check her condition after this. She didn't tell the doctor about it because she was afraid she was warned by these people, the assailants, that she has two daughters that will suffer the consequences if she does disclose that. And she didn't tell her husband because she was afraid what the husband would do when he finds out that she was raped. She thought that he's just going to do something stupid and create more problems. She didn't go to a doctor until five days later. It's a well-known fact that a lot of rape victims do not go to a doctor immediately. Right. And the BIA, in looking at that factor, calls that one speculative and does not rely on it. Correct. And it was not a speculation that the judge, the IJ, relied on. It was the fact that because the police was looking for her husband and her for arson, when there was a fire to their salon, she said that it was, you know, maybe they committed the arson. You know, my client, for the purpose of getting some financial gain from insurance, where my client testified that there was, she didn't know about the concept of insurance in Armenia for the properties. They don't even have that. So the IJ had a predisposition not to believe. She basically disregarded all of it, including the complaint that was filed by her husband, with the details, and out of which confirmed and supports my client's testimony, except the IJ found one inconsistency in the date when the illegal possession was taken of the property. And that was an ongoing process. It started in October and it ended when there was a fire. So just because the husband picked up March as a date of illegal possession of the property doesn't mean that it's inconsistent. There was no specific date. He just, that's when he stopped working in the business. Okay. Now you've got a little time. Why don't we hear from the other side and then you'll have the reserved time to respond. May it please the court, John Holt for the Attorney General. Substantial evidence supports the agency's adverse credibility finding. The issue before the court is whether in light of petitioners' admitted contradictory and inconsistent statements and her unpersuasive explanation for those, the evidence compels a contrary conclusion. The immigration judge has the threshold determination to determine the credibility of the witness, in this case, petitioner. In determining credibility, the focus is on what's in the mind of petitioner. Is she dishonest? Is she truthful? In order to find out whether she's truthful or honest, the immigration judge, pursuant to the INA statute, focuses on the credibility of the petitioner. I'm sure you've been around these cases enough to know that a fairly standard problem that we run into that then supports an adverse credibility finding is that the initial statements get better as time goes on. The written statement, maybe the lawyer takes a look at it and, oh, you know, this isn't going to do it. And by the time we get to testifying, instead of being attacked once, well, the plaintiff, the petitioner was attacked five times. You know, whatever it is, the story gets better. In this one, that's not necessarily what happened. For example, the written statement is that the extortion of $100 a month went on for quite some time. And she testifies it goes on only from October until the following March. So the story gets, in a sense of it being favorable to her, her testimony makes the story worse for her, which suggests to me she's not embellishing. She may be misremembering. If she remembered properly what had been stated initially, she'd be sticking to the story. So this is not an IQ test. This is a truthfulness test. And she's testifying to a time period that is less favorable to her than is in the written record, and yet you're holding that against her as an inconsistency and a reason for disbelieving her. We submit to the court that it was proper for the immigration judge to focus on the inconsistency regarding the extortion payments. As the court just pointed out in her first statement, may I read from her first statement at page 642? She stated, a group of guys came to our shop and told my husband that from now on every week he had to pay $100. Reading further, for about two years we struggled and scraped to pay these thugs $100. It was a lot of money for us to lose. Right, that's the written statement. So in her written statement she says weekly. In her testimony she says monthly. Right. In her written statement she says it was for two years. Right. In her testimony it was for six months. Well, even less. It was October to March. Yes, and another important fact, Your Honor, on this point is that... I think you just made my point. That is to say, her story, when she actually testifies, gets much less favorable to her. That is true. That is true, but we would submit that that's not dispositive merely because it's not as bad when she testifies. For example, she was a school teacher that earned $40 a month. Under her testimony she was paying $600 in extortion money. Under her written statement she and her husband were paying over $10,000 in extortion money. So we would submit that the details surrounding the testimony regarding extortion were perfectly proper for the immigration judge to consider. Follow the money. And even though the money wasn't as great under her testimony, the point that she exaggerated it so significantly and exaggerated the details were factors for the immigration judge to consider. Now the extortion payments were not the only fact that the agency focused on. They also focused on the admitted inconsistencies regarding her injuries that resulted from the alleged sexual assault. When she testified, she testified that two teeth were knocked out. Then she testified that two teeth were knocked loose. Then she testified there were four teeth. Then there were five teeth. It's an unfortunate circumstance. You know, I read the testimony, and I didn't find the testimony to be inconsistent. I found that there was a little bit of confusion as to four or five, but I didn't find any inconsistency in the oral testimony. Well, Your Honor, it certainly presented different facts over time regarding the number of teeth involved and what happened to the teeth. For example, when she was confronted with her testimony regarding whether the teeth were indeed knocked out, she said no, they weren't knocked out, that they were knocked loose. But knocked loose meant knocked out. And so the immigration judge was faced with that. Well, and was there any dispute in the end that she had two teeth replaced? That she lost two teeth as a result of the incident? The testimony stated in the record, she stated that the teeth were knocked loose. I understand that. I'm asking you a different question. The dental record does not establish that two teeth were replaced. The dental record just states that four teeth were treated, and she was charged $100 for the dental treatment. So the government contends, you contend that the record shows that she has all of her original teeth? We would submit that the testimony regarding the teeth is conflicting and contradictory. No, I asked you a different question. I think it was a little hard for me. I didn't look at the actual dental record, so I'm relying on what I read in the transcript. But I just heard from her attorney that, in fact, she has two either false teeth or replacement teeth. Is that untrue? Your Honor, the agency didn't make a dispositive finding whether or not teeth were replaced or not. But on page, excuse me just a moment, the dental record on page 548 states that four teeth were treated, and it doesn't say anything about teeth being replaced. And so I'm not going to take a position that's not in either the immigration judge's or the board's decision regarding whether or not she has all of her teeth. The important point we would respectfully submit to the court is that she was conflicting on this very significant matter, and the documentary evidence that she offered regarding the dental treatment certainly doesn't establish that she had teeth replaced. I have to say also, now, all we have is the English translation, but I found in reading the transcript that the translation was a little approximate from time to time. So loose, knocked out, hanging. Well, the translator seems to think that in Russian there's the same word for hand and arm. You probably saw that in the transcript. I cannot believe that the Russians have the same word for hand and arm. I don't know Russian, but there's some problems with the translation. Your Honor, the petitioner does raise a process issue whether or not she received a full and fair hearing. Well, I'm not making that point. It's rather that if we're going to rely for a finding of adverse credibility on, at one point, the English translation of what she's saying is that they were knocked out, and at another point the translation is that they were loose, and at another point they're hanging down, that may be a problem with the translation, and that's not an entirely implausible claim given what I see as the other aspects of the translation that I can discern from just reading the English part of it. Petitioner does not make that argument before the court in her brief. She doesn't argue that translation issues were the root of any problem regarding the dental treatment or any other aspect of the case. We would submit to the court that she does assert that there were inaudible, there's an inaudible transcription. But the important point with regard to her assertion of that error was that there's absolutely no prejudice. For example, I think there are two points that reaffirm that there were no problems with the inaudible translation. First of all, the board, contrary to petitioner's counsel, specifically states on page six of the administrative record that they considered that there were inaudible aspects of the proceedings. But they said petitioner has not identified any answers that were problematic that compromised in any way the credibility decision of the immigration judge. The other point is that petitioner asserts that the immigration judge was unfair and perhaps heavy-handed in her conduct of the proceedings. But we would submit that there are two portions of the record that are helpful to the court in that regard. From page 341 to 353, the immigration judge just explains that during the proceedings, the recorder failed, and so there was no transcription. And so the immigration judge said to counsel, well, how should we address this, and gave each of the counsel the opportunity. But the judge said, I've taken very detailed notes. How about I read my notes? And so the judge, in this 10-page or so portion of the record, the judge reads absolutely all of her notes, and the counsel acquiesces. The counsel agrees. The counsel states that that's sufficient, there's no problem, and accepted the judge's recapitulation of the testimony. Finally, on page 384 of the record, at the very end of the proceedings, the immigration judge turned to petitioner's counsel and said, is there anything you want to elaborate on? Is there anything, any omission or any, excuse me, anything you want to elaborate on or develop further? And petitioner's counsel said, no, your honor, we don't have anything further. So I think with regard to the process issue, the key point is that petitioner has an established prejudice, either at the agency or before this court, with regard to either the inaudible transcription or she doesn't raise questions as the court validly expresses a concern, whether there was a language problem. That's not petitioner's assertion. That was a point. Okay. And in regard to the inconsistency. Now you're over time, so if you'd like to sum up. Thank you, your honor. We would submit that the evidence does not compel a contrary conclusion and petitioner was not prejudiced in any way by any process errors in the case. Thank you, your honor. Okay, thank you. Would you put a minute on the clock, please? Thank you, your honor. In regards to the government's position in regarding the testimony and translations, it's very difficult to follow whether the translation was correct or not, primarily because the interruptions conducted by the IJ was numerous. And every time the questions were asked, they were asked in a different way with a different wording, and this is why most likely why it was lost teeth or loosened teeth or knocked down, because the way the questions were posed. I mean, I can read the, you know, so many interruptions. There were like 58 interruptions by the judge when she would take over the questioning, whether it was on direct or the cross. And that was very confusing, too. And that's why we think that the judge took the, not as a neutral arbiter, but more of a government position trying to prove that there was inconsistencies in my client's testimony. In regards to details in the medical records and in dental records, if there was insufficient records detailing, the judge should have followed the Wren rule and requested corroborating documentation and give notice to my client to provide those documents if that was the issue, because to check to see whether the two teeth were knocked down is very easy. We didn't have to get the records from Armenia. We could have just gotten from the dentist here locally, but it was never raised until the testimony, and the judge never gave her notice to get some kind of corroboration of that. Okay. Thank you. Thank you, Your Honor. Okay. The case just argued is submitted.
judges: Graber, W. Fletcher, Owens